IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WALTER J. LEAVEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:12-CV-00073 |
| ) | |
| CAROLYN W. COLVIN,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Walter J. Leavel ("Leavel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Leavel alleges that the Appeals Council failed to properly evaluate the additional evidence he submitted for review, and that the case should be remanded pursuant to sentence four of 18 U.S.C. § 405(g).

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the evidence submitted to the Appeals Council is neither new nor material and therefore remand is not necessary. Accordingly, I **RECOMMEND DENYING** Leavel's Motion for Summary

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 19.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Leavel failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Leavel bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevents him from engaging in any and all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Leavel was born on May 21, 1961 (Administrative Record, hereinafter "R." at 152), and was a younger individual on his alleged onset date. R. 31; 20 C.F.R. §§ 404.1563, 416.963.

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Leavel's date last insured is December 31, 2013. R. 156. He must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Leavel has a high school education with two years of college. R. 31, 42. Leavel previously worked as a certified nurse's assistant ("CNA"), which is medium semi-skilled work; and a cleaner, which is medium unskilled work that was done at a heavy exertional level. R. 52, 169. Leavel reported that during the relevant period, he had the capacity to watch television, perform light housework, care for pets, and shop. R. 207–10.

## Claim History

Leavel protectively filed for SSI and DIB on May 26, 2009, claiming that his disability began on September 8, 2008. R. 152. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 64, 72, 84, 93. On June 18, 2010, Administrative Law Judge ("ALJ") Thomas R. King, Jr. held a hearing to consider Leavel's disability claim. R. 22. Leavel was represented by attorney Robert J. Oliver, Jr., at the hearing, which included testimony from Leavel and vocational expert J. Herbert Pearis, MS. R. 36.

On September 20, 2010, the ALJ entered his decision denying Leavel's claims. R. 19. The ALJ found that Leavel suffered from the severe impairments of obesity and diabetes with peripheral neuropathy. R. 24. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 29. The ALJ further found that Leavel retained the RFC to perform a full range of sedentary work. R. 29. The ALJ determined that Leavel could not return to his past relevant work as a CNA or cleaner (R. 30), but that Leavel could perform a full range of sedentary jobs that exist in significant numbers in the national economy. R. 31. Thus, the ALJ concluded that Leavel was not disabled. R. 31. On

May 30, 2012, the Appeals Council denied Leavel's request for review (R. 1), and this appeal followed.

## ANALYSIS

### Issue on Appeal

This case presents the sole issue of whether the additional evidence submitted to the Appeals Council is "new" and "material" such that it warrants remand to the ALJ under sentence four of 18 U.S.C. § 405(g). Leavel submitted a number of documents as additional evidence to the Appeals Council that were made part of the record. R. 4. Leavel specifically identifies only a series of those medical records as pertinent to this court's review. Pl's Br. at 10, 13. These include the treatment records and opinions from Michael Brookings, M.D. at Augusta Health Family Practice and treatment records from Nelly Maybee, M.D. at Augusta Health Diabetes and Endocrinology. Although I focus on these documents, as the parties have in their briefs and argument, I consider the totality of evidence before the Appeals Council in my determination of whether remand is warranted.[3]

### Legal Standard for New Evidence

When deciding whether to grant review of an ALJ's decision, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991.)  Evidence is new if it is not duplicative or cumulative.  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  Id.

---

[3] Leavel presented a total of nine exhibits to the Appeals Council for review. In addition to the records of Dr. Brookings and Dr. Maybee, these exhibits include a letter from Leavel's attorney (R. 264), records from Augusta Health Cardiology from July 2010 (R. 438–49), records from Augusta Health Speech Pathology from August and September 2010 (R. 451–69), and records from Shenandoah Valley Neurology Associates from August 2010 through February 2011 (R. 480–509).

When the Appeals Council denied Leavel's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991.) "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001)(unpublished opinion)); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013).

## Medical Evidence Before the ALJ

To assess whether the disputed Appeals Council evidence is new and material requires a brief survey of the medical evidence before the ALJ at the time of his decision. The sum of the evidence in the record reflects that Leavel is obese and has diabetes with peripheral neuropathy. The record reflects that initially, Leavel's diabetes was poorly controlled and he experienced pain in both legs associated with neuropathy. Leavel sought treatment from a diabetes specialist in 2010 that brought Leavel's diabetes under control. However, Leavel continued to complain of pain through the time of the hearing before the ALJ. Leavel testified before the ALJ that he experienced neuropathy which affected nearly his whole body, including both feet, ankles, legs, thighs, hands, arms, shoulders, back, and chest. R. 43.

In September and October 2008, soon after the alleged onset of disability, Leavel saw Dr. Thomas G. Gray for complaints of leg and feet pain. R. 307–309. Dr. Gray referred Leavel to Shenandoah Valley Neurological Associates, who conducted nerve conduction and EMG studies on October 24, 2008. R. 344–46. These tests found that Leavel had evidence of a sensorimotor polyneuropathy, specifically an axonopathy (a disorder affecting the axons of peripheral nerves) that was mild to moderate in degree – worse on the left than right. R. 345. Leavel then saw Dr. David M. Karaffa of Shenandoah Neurological Associates on November 24, 2008. R. 417–19. Dr. Karaffa found that Leavel had peripheral neuropathy with evidence of radicular changes in the left lower extremity. Dr. Karaffa recommended further testing, including an MRI and that Leavel undergo physical therapy for "gait training and strengthening due to his neuropathy and hip flexor weakness." R. 418–19. In a letter, Dr. Karaffa noted Leavel as having normal strength with the exception of his bilateral hip flexors and only mild difficulty with toe, heal, and tandem gait. R. 418. At a follow up appointment on December 2, 2008, Dr. Gray diagnosed Leavel with

neuropathy in the lower extremities and diabetes. Leavel was to follow up with Dr. Karaffa with Shenandoah Valley Neurological Associates for his neuropathy, and Dr. Nelly Maybee for his diabetes. R. 306. Leveal was also sent for an outpatient physical therapy evaluation. R. 295–98.

On an Attending Physician's Statement of Disability form dated December 30, 2008, Dr. Karaffa stated his primary diagnosis of peripheral neuropathy and secondary diagnosis of diabetes. R. 413. Dr. Karaffa noted ongoing limitations caused by burning pain in his feet while standing, walking, lifting/carrying, reaching/working overhead, pushing, and pulling. R. 414. However, Dr. Karaffa determined no psychiatric impairment, noting that Leavel had "[e]ssentially good functioning in all areas. Occupationally and socially effective." Leavel continued physical therapy until he was discharged in January 2009 after reaching a plateau and reporting 60% improvement in his overall function. R. 386. In February 2009, Dr. Karaffa reported to Dr. Gray that Leavel's MRI did not reveal any abnormalities in the lumbar spine and mild decreased toe-heel and tandem gait. R. 412. Dr. Karaffa submitted a second Statement of Disability form on April 6, 2009 with diagnoses and limitations identical to his December 2008 report. R. 410–11. Later in April 2009 Dr. Karaffa filled out a Release to Work form for Leavel's employer, McKee Foods, stating that Leavel was unable to work, with restrictions of no standing greater than 20 minutes. R. 406–08.

Leavel continued to see Dr. Karaffa in June, August, and December 2009. R. 400–02. On February 15, 2010, Dr. Karaffa signed a Statement of Functionality form detailing his opinion of Leavel's functional capabilities. R. 384–85. Dr. Karaffa noted that in a general workplace environment, Leavel could sit for an hour at a time for eight total hours per day, stand for one hour at a time for three total hours per day, and walk for one-half hour at a time for a total of one hour per day. R. 385. Dr. Karaffa further indicated that Leavel could occasionally lift up to 20

8

pounds bilaterally; occasionally bend at his waist; occasionally kneel and crouch; occasionally reach above, at desk level, and below his waist; and frequently use fingering and handling. R. 385.

On April 7, 2010, Dr. Karaffa completed a Physical Limitations Assessment with similar findings. R. 396–98. Dr. Karaffa noted that Leavel could lift or carry 20 pounds; stand or walk two to four hours in an 8-hour work day; and sit for six hours or more in an 8-hour work day. Furthermore, Dr. Karaffa indicated that Leavel could occasionally stoop, balance, crouch, kneel, crawl, and push/pull; occasionally reach in all directions R. 397. Dr. Karaffa reported fewer manipulative limitations and noted several environmental restrictions caused by Leavel's impairment to include heights, moving machinery, temperature extremes, chemicals, and vibration. R. 397. According to Dr. Karaffa, Leavel would be expected to require unpredictable and lengthy periods of rest and that Leavel could be expected to be absent from work very frequently. R. 398. Ultimately, Dr. Karaffa provided his opinion that Leavel was disabled from substantial work activity. R. 398.

Other opinion evidence regarding the functional abilities of Leavel included the Disability Determination Explanation ("DDE") from state-agency physician Luc Vinh, M.D., who noted that Leavel had neuropathy in his feet, hand, arms, and leg, but found that Leavel was "able to stand, bend, move and use [his] arms, hands and legs in a satisfactory matter." R. 64. Dr. Vinh identified Leavel's primary impairment as diabetes mellitus, and unspecified arthropathies as a secondary impairment. R. 61. Dr. Vinh determined that Leavel could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk a total of four hours, sit for about six hours in an 8-hour workday, and had an unlimited ability to push and pull. R. 61–62.

9

Dr. Vinh noted that although Leavel was unable to do the work he had done in the past, he was capable of performing less demanding sedentary jobs and therefore was not disabled. R. 64.

On reconsideration, state-agency physician R.S. Kadian, M.D. found Leavel had the primary impairment of diabetes, secondary impairment of peripheral neuropathy, as well as obesity and hypertension. R. 80. Dr. Kadian also found that Leavel had similar exertional limitations as noted by Dr. Vinh, including postural limitations of only occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and only occasionally balancing, stooping, kneeling, and crouching. R. 81–82. Dr. Kadian found that the evidence established neuropathy causing primarily foot pain, but that Leavel had "good muscle strength on examination without a disabling degree of nerve damage." R. 84. Dr. Kadian concluded that Leavel's diabetes was not well controlled at times but also had not caused disabling medical complications. R. 84. Dr. Kadian determined that Leavel was capable of performing less demanding sedentary jobs and therefore was not disabled. R. 83–84.

## New Evidence Presented to Appeals Council

Leavel seeks a remand on the strength of the additional evidence submitted to the Appeals Council. Primarily at issue are treatment and opinion records from Michael Brookings, M.D. of Augusta Health Family Practice and treatment records from Nelly A. Maybee of Augusta Health Diabetes and Endocrinology. Other evidence submitted includes treatment records from Augusta Health Cardiology, Augusta Health Speech Pathology, and Shenandoah Valley Neurology Associates. The Appeals Council, in denying its request for review, considered this evidence but found that it "[did] not provide a basis for changing the Administrative Law Judge's decision." R. 1–2. With respect to those records that relate to the

appropriate time period and were not already included in the record before the ALJ, I find that they are neither new nor material and therefore do not necessitate remand.

*Dr. Brookings*

Leavel first saw Dr. Brookings on July 6, 2010 for pain in his joints and muscles, difficulty walking due to peripheral neuropathy, and decreased sensation to his feet and hands. R. 519. Dr. Brookings diagnosed Leavel as suffering from diabetes, obesity, and diabetic neuropathy, but did not offer any treatment for these problems, stating that "I will defer to Dr. Nelly Maybee for management of his diabetes and Dr. Karaffa for management of his diabetic neuropathy." R. 520. On September 7, 2010, Dr. Brookings noted that Leavel's weight was down from earlier in the year and that Leavel had continued neuropathic pain with use of his arms and walking. R. 516. Dr. Brookings recommended Leavel "[c]ontinue with his excellent care by Dr. Karaffa" and stated that "[h]is diabetes seems to be in excellent control with Dr. Nelly Maybee." R. 517. Leavel met with Dr. Brookings again on October 18 and November 22, 2010. R. 513–14.

Dr. Brookings completed assessments on November 22, 2010 and August 9, 2011 of Leavel's physical limitations. R. 535–36, 555–56. On November 22, 2010, Leavel requested Dr. Brookings fill out a physical limitations assessment. Dr. Brookings expressed confusion as to why he, as primary care physician, was required to submit his opinion when Dr. Karaffa already gave him "complete disability." R. 513. In any event, this first assessment in November 2010 included Dr. Brookings' opinion that Leavel could lift and carry only five pounds, stand and walk for less than two hours in an 8-hour workday, sit for less than two hours during an 8-hour workday. R. 554. Dr. Brookings also noted that Leavel could never climb, balance, kneel, or crawl, and only occasionally stoop, crouch, and push/pull. R. 555. Dr. Brookings reported that in his opinion, Leavel was totally disabled from any work activity. R. 556. In August 2011, Dr.

11

Brookings indicated that Leavel would not be able to participate in employment and training activities at that time as a result of his diabetes and diabetic neuropathy. R. 535–36.

*Dr. Maybee*

The evidence submitted to the Appeals Council also included treatment notes from Dr. Nelly Maybee, who Leavel saw for treatment of his diabetes on May 6, 2010, June 25, 2010, August 25, 2010, and August 2, 2011. R. 471–77, 522–27. At Leavel's initial visit, Dr. Maybee noted that Leavel's diabetes had been poorly controlled in the past and ordered some lab work to test his blood glucose levels. R. 427. In June 2010, Leavel reported to Dr. Maybee that he had his diabetes in better control. R. 475. On August 25, 2010 the objective tests from Dr. Maybee showed that Leavel maintained "good control" of his diabetes. R. 471. Nearly a year later on August 2, 2011, however, Dr. Maybee reported that Leavel lost his insurance and that his diabetes control had "deteriorated significantly." R. 522. The treatment records from Dr. Maybee provide no opinion as to any functional limitations caused by Leavel's diabetes.

After reviewing the record as a whole, I find that the additional evidence submitted to the Appeals Council does not require remand because it is neither new nor material. As an initial matter, the medical records of Dr. Maybee from August 2011 (R. 522–27) do not relate to the relevant time period at issue. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a … subsequent deterioration of the previous non-disabling condition." Cameron v. Astrue, 7:10CV00058, 2011 WL 2945817, at *8 (W.D. Va. July 21, 2011)(citing Szubak v. Sec'y, Dep't Health & Human Servs., 745 F.2d 831, 833 (3d Cir.1984)). Here, Dr. Maybee's August 2011 records reflect a subsequent deterioration in Leavel's diabetes that was not present at the time of the ALJ's decision. Specifically, Dr. Maybee noted in August 2010, just one month before the

12

ALJ's decision that Leavel maintained his diabetes under "good control." R. 471, 475. That condition changed in the following year because of circumstances relating to Leavel's ability to obtain medical treatment. The deterioration between August 2010 and August 2011 does not relate back relevant period where, as here, the record is not reflective of functional limitations existing during the relevant period.

Moreover, the administrative record reflects that the medical records from Leavel's May 6, 2010 visit to Dr. Maybee were submitted to the ALJ for consideration prior to his decision, and are therefore not new evidence. R. 426–29.

With regard to the treatment notes of Dr. Brookings from July through November 2010 and his later opinions, I find them neither new nor material. Dr. Brookings' treatment records, as Leavel's primary care physician, reflect that he left treatment of Leavel's neuropathy and diabetes to Dr. Karaffa and Dr. Maybee. Dr. Brookings "defer[red]" to these specialists and would gradually assume care for the rest of his conditions. R. 520. The records themselves generally show that Dr. Brookings primarily focused on the other medical conditions affecting Leavel, such as sleep apnea and hypertension. Indeed, when Leavel requested a limitations assessment for disability, Dr. Brookings wrote, "Dr. Karaffa is treating him and evaluating him for his diabetic neuropathy and did fill out the paperwork himself, giving him complete disability but for some reason, he required an evaluation by his primary physician." R. 513. This further suggests that Dr. Brookings' insight into any functional limitations caused by the diabetic neuropathy was merely perfunctory and secondary to Dr. Karaffa. As such, these treatment notes and opinions are not new evidence because they are duplicative and cumulative. Furthermore, references to Leavel's diabetes in Dr. Brookings' notes are mostly limited to a description of Leavel's improved control of the condition under the direction of Dr. Maybee. Accordingly,

these notes do not reflect a disabling condition, do nothing to disturb an RFC finding of sedentary work, and are thereby immaterial.

Likewise, the balance of Dr. Maybee's records are immaterial, and do not create a reasonable possibility of a different outcome. Of the records that relate to the proper time period and were not already in the record before the ALJ, none contradict the ALJ's finding that Leavel could perform sedentary work. To the contrary, the records show that Leavel's diabetes was under "better" and "good control" and that Leavel's hypertension and cholesterol levels were "well controlled." R. 471, 475. The records also show that Leavel's chest pains, documented elsewhere in the record, were likely non-cardiac related and that Leavel had a normal cardiac catheterization. R. 471–72. Simply put, Dr. Maybee's records do more to support the ALJ's RFC finding than Leavel on this appeal.

Leavel relies on Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), to support his request for remand. In Meyer, the ALJ denied a plaintiff's disability claim noting that the record lacked restrictions placed on the plaintiff by a treating physician and "suggesting that this evidentiary gap played a role in its decision." Id. at 707. The plaintiff obtained evidence of his restrictions from his treating physician and submitted it to the Appeals Council, who made it part of the record but denied review. The Fourth Circuit remanded the case to the ALJ, instructing the ALJ to consider the new evidence because it addressed the evidentiary gap identified by the ALJ regarding any restrictions on the plaintiff's functional abilities. The Court stated that "[o]n consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here….no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707.

14

Here, no such evidentiary gap exists. Unlike in Meyer, Leavel's treating physicans have provided several opinions regarding Leavel's functional capacity. The record contains three disability assessments and numerous treatment records from Dr. Karaffa, a neurological specialist at Shenandoah Valley Nerological Associates. These opinions and records were properly before the ALJ, and were thoroughly considered in his opinion. Dr. Brookings is a family care practitioner who explicitly and repeatedly deferred to Leavel's treating specialists, Dr. Karaffa and Dr. Maybee. Dr. Brookings' records and opinions fill no evidentiary void which factored into the ALJ's decision; they are merely duplicative of the medical opinions already present in the record. The ALJ as fact finder has already made well-reasoned findings as to Dr. Karaffa's opinion, weighing that opinion against other evidence in the record. The Appeals Council evidence is neither new nor material. I have also carefully reviewed the record as a whole and find that substantial evidence supports the ALJ's opinion that Leavel is capable of sedentary work and that he is not disabled.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                        Enter: January 13, 2014

                                        *Robert S. Ballou*

                                        Robert S. Ballou
                                        United States Magistrate Judge